**Objection deadline:  January 24, 2017 at 4:00 p.m.**
**Hearing date:  January 31, 2017 at 10:00 a.m.**

**SIDLEY AUSTIN LLP**
Michael G. Burke
Brian J. Lohan (admitted *pro hac vice*)
Andrew P. Propps
Andrew M. Soler
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 839-5300
Facsimile:   (212) 839-5599

*Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                                                  :
In re:                                                            :    Chapter 15
                                                                  :
KARHOO INC. (in administration), *et al.* [1]                     :    Case No. 16-13545 (MKV)
                                                                  :
           Debtors in a Foreign Proceeding.                       :    (Jointly Administered)
                                                                  :
------------------------------------------------------------------x

**FOREIGN REPRESENTATIVE'S MOTION FOR ENTRY OF AN ORDER
PURSUANT TO SECTION 105, 363, 365, 1501, 1514, 1520 AND 1521 OF THE
BANKRUPTCY CODE, AND BANKRUPTCY RULES 2002, 6004, 6006 AND 9014
(I) APPROVING THE SALE OF THE DEBTORS' INTERESTS IN US ASSETS, AND
(II) GRANTING OTHER RELIEF RELATED TO RECOGNITION**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Paul Cooper, in his capacity as the authorized foreign representative (in such capacity, the "Foreign Representative") of the Debtors in administrations (the "UK Proceedings") under English law, pursuant to the Insolvency Act 1986 (the "Insolvency Act"), by and through his undersigned counsel, hereby submits this motion (the "Motion"), pursuant to

---

[1] The chapter 15 debtors incorporated in England and Wales (collectively, the "UK Debtors"), along with the English Company Number of each UK Debtor, are:  Karhoo Limited (in administration) (09318091) and Karhoo Technologies Limited (in administration) (09864120).  The chapter 15 debtors incorporated in the United States (collectively, the "US Debtors"), along with the last four digits of each US Debtor's federal tax identification number, are:  Karhoo Inc. (in administration) (2445) and Karhoo USA Inc. (in administration) (3852).  The UK Debtors and the US Debtors are referred to herein, collectively, as the "Debtors."  The mailing address of each of the Debtors (and registered office of each of the UK Debtors) is 26-28 Bedford Row, Holborn, London, WC1R 4HE, United Kingdom.

sections 105(a); 363(b), (f), (m) and (n); 365, 1501, 1514, 1520 and 1521 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") and Rule 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), requesting the entry of an order (the "Proposed Order"), substantially in the form attached hereto as Exhibit A, approving, pursuant to section 363 of the Bankruptcy Code, the sale (the "Sale") of the Debtors' right, title, and interest in the US Assets (as defined below) to Flit Technologies Limited ("Flit" or the "Purchaser") free and clear of all liens, claims, encumbrances and other interest, except as otherwise provided in the Sale and Purchase Agreement (the "SPA")[2] and the Proposed Order, and (ii) granting related relief.  In support of this Motion, the Foreign Representative respectfully states as follows:

## BACKGROUND[3]

1.  As explained in more detail in the Verified Petition, the Cooper Declaration, the Taylor Declaration, and the Memorandum of Law, the Debtors are part of a group of companies ("Karhoo") that offered a "ride comparison app" as an alternative to the Uber/Lyft "ride-sharing app" model.  Instead of maintaining its own fleet of drivers and cars, Karhoo contracted with local dispatchers and fleet owners, providing customers with a choice of vehicles and prices through its mobile application.

2.  Founded in London, England, in late 2014, Karhoo began operating in London in early 2016 and soon branched out to several other cities in England, as well as New York City

---

[2] The SPA has not yet been finalized by the parties, but the expected material terms are provided in this Motion. The Foreign Representative will provide the Court and notice parties a final version of the SPA prior to the hearing.

[3] Additional factual background regarding the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these Chapter 15 Cases, is set forth in detail in the *Declaration of Paul Cooper in Support of the Verified Petition* (the "Cooper Declaration") (Dkt. No. 4) and the *Verified Petition For Entry of An Order Recognizing Foreign Main Proceeding* (the "Verified Petition") (Dkt. No. 3).  Details regarding the UK Proceedings and the Insolvency Act are set forth in the *Declaration of Phillip Taylor in Support of the Verified Petition* (the "Taylor Declaration") (Dkt. No. 5).

2

(as a pilot program), Paris, Singapore, and London; Karhoo intended an aggressive schedule in commencing operations in other cities in England, Europe, North America, and Asia.

3. In late 2016, however, Karhoo experienced financial difficulties and was unable to obtain sufficient additional funding to continue operations. On November 9, 2016, the boards of directors of the UK Debtors appointed Paul Appleton and Paul Cooper as administrators of those companies (in such capacity, the "UK Debtor Administrators") pursuant to the Insolvency Act. On November 16, 2016, the boards of directors of the US Debtors appointed the UK Debtor Administrators as administrators of the US Debtors (in such capacity, the "US Debtor Administrators," and, as administrators of all of the Debtors, the "Administrators"). As administrators under the Insolvency Act, the Administrators are "foreign representatives" as such term is defined in section 101(24) of the Bankruptcy Code.

4. The Administrators have negotiated a sale of assets of the Debtors, including the assets of the US Debtors and such assets of the UK Debtors that are in the territorial jurisdiction of the United States (together, the "US Assets"). The Foreign Representative is aware that under Second Circuit precedent, this Court is required to review the sale of the US Assets under the principals of section 363 of the Bankruptcy Code, *see Krys v. Farnum Place, LLC (In re Fairfield Sentry Ltd.)*, 768 F.3d 239, 244 (2d Cir. 2014), and therefore files this Motion. In support of this Motion, the Foreign Representative submits the declaration of Paul Cooper (the "Cooper Sale Declaration") dated January 6, 2017, filed contemporaneously herewith.

5. A hearing to consider recognition of each of the UK Proceedings as a foreign main proceeding is set for 10:00 a.m. on January 31, 2016, before this Court.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(P). Venue is proper in this district pursuant to 28 U.S.C. § 1410.

7. These cases have been properly commenced pursuant to section 1504 of the Bankruptcy Code by the filing of the Chapter 15 Petitions for recognition of the UK Proceedings under section 1515 of the Bankruptcy Code.

8. The statutory predicates for the relief requested in this Motion are sections 105(a), 363, 365, 1501, 1514, 1520 and 1521 of the Bankruptcy Code.

## SUMMARY OF THE SPA

9. Pursuant to Local Rule 6004-1 and this Court's Guidelines for the Conduct of Asset Sales, and as noted herein, the Proposed Order is attached hereto as <u>Exhibit A</u>. For the purposes of full disclosure, the material terms of the Sale are as follows, but only the US Assets are subject to this Motion:[4]

- <u>Purchased Assets</u>: the assets, rights, claims, title and benefit of each Debtor, the Intellectual Property Rights (as defined in the SPA), all Intellectual Property Rights of the Debtors, all rights of action relating to the Intellectual Property (as defined in the SPA), the books of account, databases, order records, lists of customers, suppliers and prospective customers and suppliers, historic insurance records, and other such records belonging to the Debtors and all records and other documents relating to the foregoing (but not, for the avoidance of doubt the Administrators' records).

- <u>US Assets</u>: Such of the Purchased Assets as are owned by the US Debtors or the Purchase Assets as are owned by the UK Debtors and are within the territorial jurisdiction of the United States. The US Assets include, without limitation, (1) Supplier and Dispatch Contracts entered into by the US Debtors and (2) any Intellectual Property Rights owned by the UK Debtors which are registered or filed in the United States. The US Assets do not include any lists of customers or

---

[4] These summaries are provided for informational purposes only, and to the extent there is a discrepancy between any summary and the terms of the SPA, the SPA shall control. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the SPA.

4

prospective customers or any personally identifiable information, as defined in section 101(41A) of the Bankruptcy Code.[5]

- <u>Conditions to the Sale</u>: as to the US Assets, payment of the Cash Consideration (as defined in the SPA) and the Equity Consideration (as defined in the SPA); an Order by this Court recognizing the UK Proceedings as to the US Debtors; an Order by this Court approving, pursuant to section 363 of the Bankruptcy Code, the sale of the US Debtors' right, title and interest (if any) in and to the US Assets to the Purchaser; and the Secured Noteholders (as defined below), the agent for the Secured Noteholders, and the US Debtors executing a Consent and Release Document.

- <u>Purchase price</u>: Cash Consideration in the amount of $500,000; Equity Consideration in the amount of 10% of the preferred ordinary shares of the Purchaser.[6]

- <u>Deadline for approval or closing of the sale</u>: February 28, 2017.

- <u>Relief from Bankruptcy Rules 6004(h) and 6006(d)</u>: the Foreign Representative is seeking relief from the fourteen (14) day stay imposed by Bankruptcy Rules 6004(h) and 6006(d).

## **RELIEF REQUESTED**

10.     By this Motion, the Foreign Representative seeks the entry of an order, substantially in the form of the Proposed Order, pursuant to sections 105(a), 363(b), (f), (m) and (n), 365, 1501, 1514, 1520 and 1521 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9014 (i) approving the Sale of the US Assets to the Purchaser free and clear of all liens, claims, encumbrances and other interests, except as otherwise set forth in the SPA and the Proposed Order, and (ii) granting related relief.

---

[5] As to any personal data sold by the UK Debtors under the SPA, the sale of which is outside the scope of this Motion, the SPA will include an undertaking by the Purchaser to deal with such information in a manner consistent with any applicable privacy policy and to delete and destroy any such data it may receive from the UK Debtors other than in accordance with such privacy policy.

[6] This is the total contractual consideration. The Administrators and the Purchaser, in consultation with other parties including the Secured Creditors (defined below), have allocated the Cash Consideration to the UK Debtors' assets and the Equity Consideration to the US Debtors' assets, such that the Equity Consideration will be available to satisfy the claims of the US Debtors (primarily the Secured Creditors).

5

**BASIS FOR RELIEF REQUESTED**

**A.     The Court Should Approve the Sale Pursuant to Section 363 of the Bankruptcy Code**

11.     Based on the results of the Sale Process and the favorable terms of the SPA, the Foreign Representative believes that the Sale of the Purchased Assets, including the US Assets, in accordance with the terms and conditions of the SPA represents the best realization of value for the Debtors' creditors and other stakeholders under the circumstances.  The consummation of the sale, as to the assets of the US Debtors (which are within the territorial jurisdiction of the United States and therefore within this Court's jurisdiction upon recognition of the relevant UK proceedings as foreign main proceedings) is expressly conditioned upon this Court's entry of an order approving the Sale no later than February 28, 2017.  This Court's approval of the Sale under section 363 of the Bankruptcy Code will permit the Foreign Representative to sell the US Assets without disruption and in a timely and efficient manner.  Absent the relief requested herein, the Debtor and its creditors will potentially suffer significant, if not irreparable, harm due to an inability to close the Sale in full.

**I.     Section 363 of the Bankruptcy Code is Applicable Upon Recognition Pursuant to Section 1520 of the Bankruptcy Code**

12.     Section 1520(a)(2) of the Bankruptcy Code provides, in relevant part, that "[u]pon recognition of a foreign proceeding that is a foreign main proceeding . . . section[] 363 appl[ies] to a transfer of an interest of the debtor in property that is within the territorial jurisdiction of the United States to the same extent that the section[] would apply to property of an estate." 11 U.S.C. § 1520(a)(2).  Moreover, section 1520(a)(3) provides that upon recognition of a foreign main proceeding "unless the court orders otherwise, the foreign representative may operate the debtor's business and may exercise the rights and powers of a trustee under and to the extent

6

provided by section[] 363." 11 U.S.C. § 1520(a)(3); *see also Krys v. Farnum Place, LLC (In re Fairfield Sentry Ltd.)*, 768 F.3d 239, 244 (2d Cir. 2014) (holding that section 363 of the Bankruptcy Code applies to transfers of assets located within the United States outside of the ordinary course of business in connection with cases commenced under chapter 15 of the Bankruptcy Code); *In re Elpida Memory, Inc.*, 2012 WL 6090194, at *9 (Bankr. D. Del. Nov. 16, 2012) (same). Section 363(b) provides, in pertinent part, that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

### II. Entry into the SPA is Warranted under Section 363(b) of the Bankruptcy Code

13. The sale of the US Assets is based upon the sound business judgment of the Foreign Representative. *See, e.g.*, *In re Chateaugay Corp.*, 973 F.2d 141 (2d Cir. 1992); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 772 F.2d 1063, 1071 (2d Cir. 1983*)*; *In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG) (Bankr. S.D.N.Y. July 31, 2002); *see also Official Comm. of Sub. Bondholders v. Integrated Res., Inc.* (*In re Integrated Res., Inc.*), 147 B.R. 650, 656 (S.D.N.Y. 1992) (*quoting Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985) ("the business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company,'" which has continued applicability in bankruptcy)). Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(l). Additionally, Section 105(a) provides, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

7

14. Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of the estate outside the ordinary course of business, courts in this Circuit and elsewhere have found that a debtor's sale or use of assets outside the ordinary course of business should be approved if the debtor can demonstrate a sound business justification for the proposed transaction. *See e.g. In re Chateaugay Corp.*, 973 F.2d at 144-45 (finding that section 363(b) was applicable because sound business judgment supported the sale of assets); *In re Lionel Corp.*, 722 F.2d at 1072 (same); *In re Boston Generating, LLC*, 440 B.R. 302 (Bankr. S.D.N.Y. 2010). Courts generally do not interfere with business decisions absent a showing of "bad faith, self-interest, or gross-negligence." *Id*.

15. The "sound business judgment" test requires a proponent of a sale to establish four elements in order to justify the sale or lease of property outside the ordinary course of business. These factors are (a) that a "sound business purpose" justifies the sale of assets outside the ordinary course of business, (b) that adequate and reasonable notice has been provided to interested persons, (c) that the trustee or debtor in possession has obtained a fair and reasonable price, and (d) that the purchaser has acted in good faith. *See MF Global*, 467 B.R. 726, 730 (Bankr. S.D.N.Y. 2012); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986).

16. In the instant matter, the Foreign Representative submits that ample business justification exists to sell the Purchased Assets, including the US Assets, to the Purchaser under the terms of the SPA. The Sale satisfies all four conditions of the "sound business judgment" test. First, sound business purposes justify the Sale. The Foreign Representative believes that the Sale presents the best opportunity for the Debtors to maximize the value of the Purchased

8

Assets, including the US Assets. The Foreign Representative believes that there is no realistic opportunity for the Debtors to restructure as a going concern, as they do not have sufficient working capital (and it is not feasible for the Debtors themselves to obtain the required funding) to operate their assets. The Administrators, with the assistance of their professionals, marketed the Purchased Assets, including the US Assets, for several weeks after their appointment. The Debtors have proposed the sale of the Purchased Assets, including the US Assets, after thorough consideration of viable alternatives, and have concluded that the Sale is supported by a number of sound business reasons.

17. Second, fair and reasonable notice has been provided to parties interested in the Sale. As noted in the Cooper Sale Declaration, the Administrators and their advisors engaged in extensive negotiations for several weeks after the Administrators' appointment to solicit higher and better offers for the Purchased Assets, including the US Assets, from interested parties, and took all steps possible to preserve the value of the Debtors and the Purchased Assets, including by commencing these chapter 15 cases. Furthermore, due to the nature of the business and the public interest in this type of mobile application, the Debtors' distressed situation was highly publicized, receiving significant coverage in the international financial and popular press, including in Bloomberg, the *Financial Times*, and the *Daily Mail*;[7] there was ample opportunity for any interested party to step forward. Moreover, the Chapter 15 Notice Parties (as defined below) and the Debtors' counterparties under contracts that are included in the US Assets are being served with a copy of this Motion in accordance with the *Order Pursuant to Federal Rules of Bankruptcy Procedure 2002 and 9007 Scheduling Hearing and Specifying Form and Manner*

---

[7] *See, e.g.*, *Uber Rival Karhoo Closes Amid 'Dire' Financial Problems*, BLOOMBERG (Nov. 8, 2016), avail. at https://www.bloomberg.com/news/articles/2016-11-08/uber-rival-closes-after-raising-250-million-from-investors; *Karhoo taxi app closes after six months*, FIN. TIMES (Nov. 8, 2016), avail. at https://www.ft.com/content/b5d1068e-a5a6-11e6-8898-79a99e2a4de6.

9

*of Service of Notice* [Dkt. No. 19] and section 1514 of the Bankruptcy Code.

18.     Third, the Foreign Representative believes that the SPA establishes a fair and reasonable price for the Purchased Assets, including the US Assets, and that the purchase price is the best offer received in view of the Debtors' substantial liquidity challenges, business failure, assets base that could become less marketable over time, and the need for a prompt closing with minimal risk.

19.     Fourth, as discussed more fully below and in the Cooper Sale Declaration, the negotiation process undertaken with respect to the SPA satisfies the good faith requirement.  The SPA is the product of good faith and arm's-length negotiations among the parties.

20.     This Court's approval of the SPA under section 363 is not only warranted, but is critical to achieving the anticipated results of the Sale, as it will permit the Foreign Representative to sell the US Assets without disruption and provide further certainty to the Sale and to the Purchaser.  Pursuant to Clause 2.2(b)(ii) of the SPA, entry of the Proposed Order, substantially in the form attached hereto as <u>Exhibit A</u>, is a condition precedent to closing the Sale as to the US Assets.  Absent the relief requested herein, the Debtors will likely suffer substantial, if not irreparable, harm from the inability to sell the US Assets without interference and in a manner that will allow the Debtor to maximize recoveries for all creditors and other stakeholders.

21.     Accordingly, and for all the foregoing reason, the Foreign Representative submits its decision and agreement to sell the Purchased Assets, including the US Assets, pursuant to the terms of the SPA is based on its sound business judgment and is in the best interests of its estate and its creditors.

### III.     The Court Should Approve the Sale Free and Clear of Liens, Claims, Encumbrances and other Interests pursuant to Section 363(f) of the Bankruptcy Code.

22.     For all of the foregoing reasons, the Foreign Representative respectfully submits that there is more than ample justification for this Court to enter the Proposed Order, thereby authorizing the Sale pursuant to section 363 of the Bankruptcy Code.

23.     The Foreign Representative also respectfully requests that this Court authorize the Sale free and clear of liens, claims, encumbrances and other interests except as set forth in the SPA.  Under section 363(f) of the Bankruptcy Code, a trustee or a debtor in possession may sell all or any part of a debtor's property free and clear of any and all liens, claims, encumbrances and other interests in such property if (i) such a sale is permitted under applicable non-bankruptcy law, (ii) the party asserting such a lien, claim or interest consents to such sale, (iii) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property, (iv) the interest is the subject of a bona fide dispute, or (v) the party asserting the lien, claim or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest. 11 U.S.C. § 363(f).  In addition, a court may authorize the sale of a debtor's assets free and clear of any liens, claims, encumbrances and other interests under section 105 of the Bankruptcy Code.  *See Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such sales [free and clear of liens] is within the court's equitable powers when necessary to carry out the provisions of Title 11.").

24.     The Foreign Representative respectfully submits that a sale of the Purchased Assets, other than a sale free and clear of all liens, claims, encumbrances and other interests as to the US Assets, would yield substantially less value for the Debtors and their creditors than the Sale will, and that the Sale free and clear of all liens, claims, encumbrances and other interests in

11

the SPA and the Proposed Order is in the best interests of the Debtors, their creditors, and other parties in interest.  Moreover, the Purchaser would not have entered into the SPA as to the US Assets and would not consummate the Sale contemplated thereby, thus affecting the Debtors, their creditors, and other parties in interest, if the Sale of the Purchased Assets to the Purchaser were not free and clear of all liens, claims, encumbrances and other interests as to the US Assets. With respect to any and all creditors that may assert an interest in the US Assets, the Foreign Representative submits that one or more subsections of 363(f) applies to such creditors.

25. The Foreign Representative believes that one or more of the tests of section 363(f) are satisfied with respect to the transfer of the Proceeds pursuant to the SPA.  In particular, the Foreign Representative believes that at least section 363(f)(2) will be met in connection with the transactions proposed under the SPA because the party holding liens on the US Assets – holders of the Secured Convertible Term Notes due March 11, 2017 (the "Secured Noteholders") and the agent for the Secured Noteholders (together, the "Secured Creditors") – will consent, or absent any objection to this Motion, will be deemed to have consented, to the Sale.  Any lienholder also will be adequately protected by having their Liens, if any, in each instance against the Debtors or their estate, attach to the proceeds of the Sale ultimately attributable to the US Assets in which such creditor alleges an interest, in the same order of priority, with the same validity, force and effect that such creditor had prior to the Sale.  Accordingly, section 363(f) authorizes the transfer and conveyance of the Sale Assets free and clear any such claims, interests, liabilities or Liens.

26. Accordingly, the Foreign Representative submits that the sale of the US Assets free and clear of all liens, claims, encumbrances and other interests, except as otherwise provided in the SPA and the Proposed Order, satisfies the statutory prerequisites of section 363(f) of the Bankruptcy Code.

### IV. The Court Should Afford the Purchaser All Protections under Sections 363(m) and (n) of the Bankruptcy Code as Good Faith Purchasers.

27. In addition to the relief requested above, the Foreign Representative requests that the Purchaser receive the protections set forth in sections 363(m) and (n) of the Bankruptcy Code. Specifically, section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). While the Bankruptcy Code does not define "good faith," courts have stated that "the phrase encompasses one who purchases in good faith and for value." *In re Abbots Dairies of Pa.*, 788 F.2d 143, 147 (3d. Cir. 1986) (internal quotations omitted). Courts have held that in order to demonstrate a lack of good faith, a party would have to show "fraud or collusion between the purchaser and [seller] or an attempt to take grossly unfair advantage [of other potential purchasers.]" *Id.*

28. The SPA was negotiated without fraud or collusion, in good faith and from an arm's length bargaining position, and was not entered into for the purpose of hindering, delaying, or defrauding present or future creditors of the Debtors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof. To the Foreign Representative's knowledge, no party has engaged in any conduct that would cause or permit the Sale to be set aside under section 363(n) of the Bankruptcy Code. Accordingly, the Foreign Representative seeks a finding that the Purchaser are good faith purchasers under section 363(m) of the Bankruptcy Code and has not violated section 363(n) of the Bankruptcy Code.

13

B. **The Assumption and Assignment of the Dispatch and Supplier Contracts is a Proper Exercise of the Foreign Representative's Business Judgment**

29. The Foreign Representative respectfully submits that the Court should authorize the assumption and assignment of executory contracts to the Purchaser as part of the Sale under the SPA. In assuming and assigning the assumed contracts, the Debtors intend to comply with the provisions of Bankruptcy Code Section 365(f)(2). Section 365(f)(2) of the Bankruptcy Code sets forth the following requirements that a debtor in possession must satisfy before it may assume an executor contract or unexpired lease:

> The [debtor] may assign an executory contract or unexpired lease of the debtor only if –
>
> (A) the [debtor] assumes such contract or lease in accordance with the provisions of this section; and
>
> (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease. 11 U.S.C. § 365(f)(2).

11 U.S.C. § 365 (f)(2)

30. Section 365(b) of the Bankruptcy Code requires the debtor to cure any defaults under the contract or provide adequate assurance that it will promptly cure such defaults. If there has been a default, the debtor must also provide adequate assurance of future performance under the contract.

31. The Foreign Representative believes that the Purchaser can perform under these contracts and will demonstrate facts at the hearing on the Sale to show the financial wherewithal and the Purchaser's willingness and ability to perform under the assumed contracts. The hearing will therefore provide the Court and the other interested parties the opportunity to evaluate and, if necessary, challenge the ability of the Purchaser to provide adequate assurance of future performance under the assumed contracts, as required under Bankruptcy Code section

365(b)(1)(C).  The Court should therefore authorize the Debtors to assume and assign the executory contracts as set forth herein and the SPA.

32.    With respect to the issue of cure amounts necessary to approve the assumption and assignment of the assumed contracts, the Purchaser will determine by January 31, 2017 the contracts to be assumed.  The Foreign Representative will subsequently file a notice containing a list of contracts to be assumed and assigned with proposed cure amounts (the "Assumption Notice"), which will include procedures on objections to the proposed cure amounts.  The Foreign Representative will serve the Assumption Notice by email upon these contract counterparties.  Objections to proposed cure amounts will be due within seven (7) days of service of the Assumption Notice.  Any unresolved objection will result in either the non-assumption of such contract, or a hearing on the disputed cure amount.

33.    The Foreign Representative believes that the foregoing procedures provide counterparties to affected contracts notice and a reasonable opportunity to protect their individual interests and should be approved.

### C.    Waiver of Bankruptcy Rules 6004(h) and 6006(d)

34.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Similarly, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."  The Foreign Representative requests that the Proposed Order, once entered, be effective immediately by providing that, to the extent applicable, the 14-day stay under Bankruptcy Rules 6004(h) and 6006(d) is waived.  Time is of the essence with respect to the Proposed Order.  The Purchasers

15

have made clear to the Foreign Representative that closing the Sale on an expedited basis is a key consideration in entering into the SPA. In order for the Debtors to sell the Purchased Assets, including the US Assets, to the Purchaser in an expedient manner, the fourteen-day stay set forth in Bankruptcy Rules 6004(h) and 6006(d) should be waived. Such a waiver will benefit the Debtors', their estates and creditors by assuring it of prompt realization of a significant asset and no party in interest will be prejudiced thereby.

## NOTICE

35.     Notice of this Motion has been provided to (a) the Office of the United States Trustee for the Southern District of New York; (b) the Internal Revenue Service; (c) the Securities and Exchange Commission; (d) counsel to ModSquad, Inc., (e) counsel to the Agent for the Secured Noteholders; (f) any other interested parties that have requested notice in the Chapter 15 Cases ((a) through (f) collectively, the "Chapter 15 Notice Parties"); and (g) the Debtors' counterparties under the Dispatch and Supplier Contracts to the extent the Foreign Representative is aware of such counterparties' electronic mail contact information. The Foreign Representative submits that no other or further notice need be provided.

## NO PRIOR REQUEST

No previous request for the relief requested herein has been made to this or any other court.

WHEREFORE, the Foreign Representative respectfully requests that the Court enter the Proposed Order, in substantially the form attached hereto as Exhibit A, granting the relief requested in this Motion and such other and further relief as may be just and proper.

Dated: New York, New York
       January 6, 2017

SIDLEY AUSTIN LLP

*/s/ Brian J. Lohan*
Michael G. Burke
Brian J. Lohan (admitted *pro hac vice*)
Andrew P. Propps
Andrew M. Soler
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
Email: mgburke@sidley.com
       blohan@sidley.com
       apropps@sidley.com
       asoler@sidley.com

*Counsel to the Foreign Representative*