**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------- x
                                                    :
In re:                                              :          Chapter 15
                                                    :
KARHOO INC. (in administration), *et al.*[1]        :          Case No. 16-13545 (MKV)
                                                    :
            Debtors in a Foreign Proceeding.        :          (Jointly Administered)
                                                    :
---------------------------------------------------------------- x


**DECLARATION OF PAUL COOPER IN SUPPORT OF MOTION FOR ENTRY OF AN
ORDER PURSUANT TO SECTION 105, 363, 365, 1501, 1514, 1520 AND 1521 OF THE
BANKRUPTCY CODE, AND BANKRUPTCY RULES 2002, 6004, 6006 AND 9014
(I) APPROVING THE SALE OF THE DEBTORS' INTERESTS IN US ASSETS, AND
(II) GRANTING OTHER RELIEF RELATED TO RECOGNITION**

I, Paul Cooper, declare under penalty of perjury under the laws of the United States of

America that the following is true and correct:

1.      I submit this declaration in support of the *Motion of Foreign Representative,*

*Pursuant to Sections 105(a), 363, 365, 1501, 1514, 1520 and 1521 of the Bankruptcy Code, and*

*Bankruptcy Rules 2002, 6004, 6006 and 9014, for Entry of an Order (i) Approving the Sale of*

*the Debtors' Interests in US Assets and (ii) Granting Other Relief Related to Recognition* (the

"Motion").[2]

2.      I am a partner of David Rubin & Partners Ltd ("David Rubin & Partners"), 26-28

Bedford Row, London WC1R 4HE, United Kingdom.  David Rubin & Partners is a restructuring

---

[1] The chapter 15 debtors incorporated in England and Wales (collectively, the "UK Debtors"), along with the
English Company Number of each UK Debtor, are:  Karhoo Limited (in administration) (09318091) and Karhoo
Technologies Limited (in administration) (09864120).  The chapter 15 debtors incorporated in the United States
(collectively, the "US Debtors"), along with the last four digits of each US Debtor's federal tax identification
number, are:  Karhoo Inc. (in administration) (2445) and Karhoo USA Inc. (in administration) (3852).  The UK
Debtors and the US Debtors are referred to herein, collectively, as the "Debtors."  The mailing address of each of the
Debtors (and registered office of each of the UK Debtors) is 26-28 Bedford Row, Holborn, London, WC1R 4HE,
United Kingdom.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed such terms in the Motion.

firm that specialises in business turnaround and rescue, corporate and personal insolvency, forensic accounting, and litigation support.  I am authorized under the provisions of Part XIII of the Insolvency Act 1986 (the "Insolvency Act") to act as an insolvency practitioner.  My Insolvency Practitioner number is 15452, and I am licensed by the Institute of Chartered Accountants in England and Wales.

3.      On November 9, 2016, as permitted by the Insolvency Act, I was appointed, along with Paul Appleton (managing partner of David Rubin & Partners) by the board of directors of each of the UK Debtors as administrator of both UK Debtors (in such capacity, the "UK Debtor Administrators").

4.      On November 16, 2016, as permitted by the Insolvency Act, I was appointed, also along with Mr. Appleton, by the board of directors of each of the US Debtors as administrator of both the US Debtors (in such capacity, the "US Debtor Administrators" and, as administrators of all of the Debtors, the "Administrators").

5.      I am an individual over the age of 18 and, if called upon, could and would testify to the facts set forth in this Declaration.  Where the matters stated in this declaration are statements of fact that are within my personal knowledge, they are true.  Where the matters stated in this declaration are statements of fact that are not within my personal knowledge, they are derived from documents and/or information supplied to me by or on behalf of the Debtors and are true to the best of my knowledge, information and belief.

6.      On December 20, 2016 (the "Petition Date"), I commenced these Chapter 15 Cases by filing verified petitions (collectively, the "Chapter 15 Petitions") pursuant to sections 1504 and 1515 of the Bankruptcy Code (collectively, the "Chapter 15 Cases") seeking

recognition by this Court of each of the UK Proceedings as a foreign main proceeding under

chapter 15 of the Bankruptcy Code.

7.     The Debtors effectively had closed their business and laid off (or made

redundant) their employees by 9 November 2016.  The value attaching to the software,

intellectual property and contracts with fleets was therefore diminishing at a rapid rate as key

staff were recruited into new employment, and interest in the platforms began to wane.  An

urgent sale was therefore sought to protect and maximize the realizable value.

8.     To that end, immediately on appointment, the Administrators instructed

Messrs Lambert Smith Hampton ("LSH") to deal with the valuation, marketing and sale of the

business and assets on our behalf.  LSH were chosen because they have the largest team in the

United Kingdom in dealing with distressed business and asset sales.  They have been established

for over 70 years and have dealt with a complete cross section of businesses, advising and

assisting all mainstream small, medium and large corporate recovery experts alike, and they had

dealt with many technology based distressed company disposals over the years.  Most

importantly, I felt confident that they were best placed to assist with this distressed sale, as few

could work to the required, restricted timescales, notably in this case.  They had the procedures,

databases, websites, PR support and marketing experience to test demand in short order working

closely in conjunction with the Administrators.

9.     In conjunction with LSH, I also instructed Valuation Consulting LLP,

specialists in valuing intangible assets, to provide me with a valuation of the intellectual property

and contracts held by the Debtors; the intellectual property was mostly held by the UK Debtors,

and the Supplier and Dispatch Contracts were mostly held by Karhoo USA Inc.  In my opinion

and that of the former Senior Management of the Debtors, a combined sale of the assets would

likely attract the most interest and ensure that realisations could be maximised for the benefit of all stakeholders.

10.     LSH commenced a marketing campaign, which included providing a teaser to LSH's business sale list of over 3,000 targeted recipients and LSH's distressed business buyers list, advertising the Debtors' business on LSH's website and through social media, publication of a press release, and access to a secured data room (upon execution of a non-disclosure agreement).  In addition, the Debtors' business was subject to a significant amount of attention in the financial press, providing additional visibility to potentially interested parties. Between 30 to 40 parties contacted LSH to express an interest, which included a number of high profile names.  Negotiations with several of those parties advanced over the subsequent period and additional key information was provided to those entities through the process via the secured data room.  In addition, expert assistance was sought from former employees regarding technical aspects of the assets, in particular the situation regarding each fleet contract and the underlying intellectual property.  Conscious of any dissipation of value as time was elapsing, a timeframe for the submission of best and final bids (2 December 2016), was set.

11.     Flit Technologies Limited ("Flit") was selected as the winning bidder. The key terms of the Flit bid were:  (a) Flit would purchase all the assets of the Debtors (including the assets of the US Debtors and such assets of the UK Debtors that are in the territorial jurisdiction of the United States (together, the "US Assets")[3] for $500,000 in cash, plus 10% of the equity of Flit; (b) Flit would assume or offer to assume any outstanding liabilities of the relevant Debtors under the Supplier Contracts that Flit considered to be

---

[3] The US Assets include, without limitation, (1) Supplier and Dispatch Contracts entered into by the US Debtors and (2) any Intellectual Property Rights owned by the UK Debtors which are registered or filed in the United States. The US Assets do not include any lists of customers or prospective customers or any personally identifiable information, as defined in section 101(41A) of the Bankruptcy Code.

commercially crucial up to an aggregate of $500,000; (c) RCI Banque SA, a wholly owned subsidiary of Renault, provided a support letter advising that it had agreed to make an investment of $15 million in Flit; and (d) the directors of Flit were two former employees of the Debtors, Flit would consider re-employing a number of key staff and management going forward.

12.     LSH received four other offers, some of which were for only certain assets of the Debtors (none of the offers for less than all of the Debtors' assets included the US Assets), and all of which would have resulted in the payment of materially less cash consideration.  In the one other offer that included an equity component, the warrants would only be exercisable once the new company had reached a valuation of $200 million.

13.     Accordingly, given the circumstances described above, LSH advised that the offer from Flit should be accepted with the other offers being rejected. All bidding parties were informed of the decision on 5 December 2016.

14.     On the basis of the economic terms of Flit's winning bid, the Administrators and Flit began negotiating definitive documentation of the Sale, which negotiations have included discussions with other stakeholders (including the holders of the Secured Convertible Term Notes due 11 March 2017 (the "Secured Noteholders") and their Agent (collectively, the "Secured Creditors")) directly affected by the Sale.  These negotiations were ongoing as of the Petition Date and as of the date hereof, but I expect them to be concluded in the near future.

15.     Based on these discussions, I believe that the Secured Creditors will consent to the Sale.

16.     The SPA has not yet been finalized by the parties, but the expected material terms are provided in the Motion.  I will provide the Court and Notice Parties a final version of the SPA prior to the hearing on the Motion.

17.     The sale and sale process was negotiated without fraud or collusion, in good faith and from an arm's length bargaining position, and was not entered into for the purpose of hindering, delaying, or defrauding present or future creditors of the Debtors.

18.     Based on Flit's representations, I believe that Flit will be able to financially perform on any assumed and assigned contract going forward.  To the extent there is a cure amount, I will cause to be filed a notice containing a list of contracts to be assumed and assigned with proposed cure amounts, (the "Assumption Notice"), which will include procedures on objections to the proposed cure amounts.  I will also cause to be served the Assumption Notice by email upon these contract counterparties.

19.     I believe that there is no realistic opportunity for the Debtors to restructure as a going concern.  They do not have sufficient working capital to operate their assets; moreover it is not feasible to obtain funding for the Debtors themselves to operate the assets.  Based on my experience advising clients in distressed transactions and familiarity with the Debtors operations and restructuring opportunities, I believe the transaction contemplated in the SPA is the best option available to the Debtors and its creditors.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

I declare under penalty of perjury under the laws of the United States of

America that the foregoing is true and correct.


Dated:  January 6, 2017
        London, United Kingdom


*/s/ Paul Cooper*
Paul Cooper

Foreign Representative for Karhoo Inc. (in
administration), Karhoo USA Inc. (in
administration), Karhoo Limited (in
administration), and Karhoo Technologies
Inc. (in administration)

26-28 Bedford Row
London WC1R 4HE
United Kingdom